UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERNETTA ELIZABETH HUTCHINSON, <br> Plaintiff, <br> v. <br> U.S. DEPARTMENT OF VETERAN AFFAIRS, et al., <br> Defendants. | Case No.17-cv-06403-VKD <br><br> **ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 32 |

Plaintiff Bernetta Hutchinson filed this action against the U.S. Department of Veterans Affairs ("VA") under the Federal Tort Claims Act ("FTCA") seeking damages for the wrongful death of her husband, Terry Hutchinson, and for medical malpractice by the doctors who treated him before his death. Dkt. No. 28. Mrs. Hutchinson is currently proceeding pro se. The United States moves to dismiss the First Amended Complaint ("FAC") on the ground that Mrs. Hutchinson's administrative claim was not timely submitted to the VA as the FTCA requires. Dkt. No. 32. All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 5, 19. For the following reasons, the Court GRANTS the motion to dismiss WITH LEAVE TO AMEND.

**I.  BACKGROUND[1]**

Terry Hutchinson served in the U.S. Army from July 30, 1964 until February 28, 1969. Dkt. No. 28 ¶ 4. Beginning in August 1991, Mr. Hutchinson sought treatment from physicians employed by the VA for a number of mental and physical conditions. *Id.* ¶¶ 4-31.

---

[1] Unless otherwise noted, the following factual allegations are taken from the FAC, and they are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

On October 24, 2014, Mr. Hutchinson committed suicide near the home he shared with his wife. *Id.* ¶ 35, Ex. 4. He left behind a note that stated: "Bernetta I am sorry. Call the VA, the will is in the safe. Keys are in the shed. Sell everything and start new. The third time will be the charm. I can't go on and you deserve a happier life. Terry." *Id.* ¶ 35, Ex. 3. In the approximately two weeks preceding her husband's death, Mrs. Hutchinson noticed that her husband appeared to be increasingly anxious. *Id.* ¶ 32. On more than one occasion, she also observed him wake suddenly and report that he was unable to breathe and had a headache. *Id.* ¶¶ 32, 34. She became increasingly concerned in the days before her husband's death when she noticed that he seemed depressed, sad, and restless. *Id.* ¶ 33. During this time, Mr. Hutchinson also complained of a number of physical symptoms, including frequent urination during the night and in the early morning, swelling in his leg, fatigue, weakness, dizziness, back pain, and constipation. *Id.* ¶¶ 32-34.

On October 27, 2014, three days after her husband's death, Mrs. Hutchinson spoke with two doctors and two other staff members at the VA medical facilities where Mr. Hutchinson apparently had received treatment. *Id.* ¶ 36. First, Mrs. Hutchinson spoke with Karen Brown, a staff nurse. Mrs. Hutchinson told Nurse Brown that she believed that testosterone medication in the form of an "Androderm patch," which her husband had been using, caused him severe anxiety and depression which resulted in his committing suicide. *Id.* Nurse Brown disagreed with Mrs. Hutchinson, stating that the Androderm patch actually helped with depression and was beneficial for her husband. *Id.* Next, Mrs. Hutchinson met with Alyson Mallon, a social worker. *Id.* She asked Ms. Mallon whether her husband's medical records indicated he was suffering from cancer. *Id.* Ms. Mallon replied that they did not, but that they indicated only that he suffered from erectile dysfunction. *Id.*

While Mrs. Hutchinson was speaking with Ms. Mallon, Dr. Christian Stetz joined them in Ms. Mallon's office. *Id.* Mr. Hutchinson had been Dr. Stetz's patient for the past eight years, and he was the physician who had prescribed the Androderm patch for Mr. Hutchinson. *Id.* Dr. Stetz expressed surprise that Mr. Hutchinson had committed suicide. *Id.* When asked by Mrs. Hutchinson whether her husband had been in ill health, Dr. Stetz responded that Mr. Hutchinson

2

was healthy and suffered only from erectile dysfunction, for which he was taking Viagra. *Id.* Mrs. Hutchinson expressed her belief to Dr. Stetz that the Androderm patch medication had caused her husband to commit suicide. *Id.* Dr. Stetz responded that the Androderm patch Mr. Hutchinson used was the "lowest dose" and had been prescribed to treat her husband's erectile dysfunction. *Id.* The FAC does not indicate whether Dr. Stetz commented directly on whether Androderm patch caused, in whole or in part, Mr. Hutchinson to commit suicide. *See id.*

Finally, Mrs. Hutchinson spoke by telephone with Dr. Adam Karwatowicz, who appears to have been the primary physician treating Mr. Hutchinson for mental health issues. *Id.* Mrs. Hutchinson told Dr. Karwatowicz of her husband's death and mentioned that he had been using an Androderm patch. *Id.* When asked by Mrs. Hutchinson why her husband would commit suicide, Dr. Karwatowicz replied by referring to a conversation in which Mr. Hutchinson had expressed concern about financial problems. *Id.* Mrs. Hutchinson also asked Dr. Karwatocicz for his views on whether any of the vitamin supplements Dr. Stetz had prescribed for her husband might have caused her husband to commit suicide. *Id.* Dr. Karwatowicz acknowledged that vitamin B12 can have side effects that could have increased her husband's depression, but indicated that he was not sure whether the Androderm patch or a vitamin supplement caused or contributed to her husband's suicide. *Id.*

On November 21, 2014, Mrs. Hutchinson received her husband's medical records from the VA, and completed her review of them in March 2015. *Id.* ¶¶ 39-40. The medical records revealed that Mr. Hutchinson recently had suffered from a number of physical and mental health conditions, including toe numbness, weakness and fatigue, loss of muscle mass, vitamin deficiency, low testosterone, erectile dysfunction, post-traumatic stress disorder, depression, and anxiety. *Id.* ¶ 40, Ex. 1 at 31-32, 40-41, 44. The records also revealed that while Mr. Hutchinson recently had disclaimed having suicidal thoughts, he had in the past told his doctors that he had thought about committing suicide. *Id.* ¶ 40, Ex. 1 at 39, 50-51. Before her husband's death, Mrs. Hutchinson knew that Mr. Hutchinson had been using an Androderm patch, and she believed that this medication was the most recent drug that had been prescribed for her husband. *Id.* ¶ 36. Although the FAC is silent on this point, Mrs. Hutchinson asserts in her opposition to the motion

to dismiss that while he was alive, her husband kept his more serious ailments from her, including the nature and extent of his mental illness. Dkt. No. 34 at 3. Mrs. Hutchinson asserts that she held an "unsubstantiated belief" that the Androderm patch caused or contributed to her husband's death because she understood that it was the last drug prescribed to him before his death. Dkt. No. 28 ¶ 36. The FAC does not state when she formed this belief.

On October 26, 2016, Mrs. Hutchinson mailed a claim for personal injury and wrongful death to the VA. *Id.* ¶ 41. She asserted in that claim that Drs. Stetz and Karwatowicz committed medical malpractice by prescribing her husband a "harmful drug" and "abandoning him," both of which she claimed increased the likelihood of her husband's suicide. *Id.* The claim included a detailed discussion of the contents of Mr. Hutchinson's medical records and Mrs. Hutchinson's communications with VA personnel following his death. *Id.*, Ex. 1.

The VA received Mrs. Hutchinson's claim on October 28, 2016, two years and four days after Mr. Hutchinson's death. *Id.* ¶ 42. On May 2, 2017, the VA sent Mrs. Hutchinson a response, denying her claim on two grounds:

> Our adjudication of your claim included a review of Mr. Terry Hutchinson's medical records, reviews of your claim by two medical reviewers in different parts of the country, and interviews of medical personnel.
>
> \*\*\*
>
> Our review concluded that there was no negligent or wrongful act on the part of an employee of the Department of Veterans Affairs (VA) acting within the scope of employment that caused you compensable harm.
>
> In addition, it appears the death occurred on October 24, 2014. A tort claim is barred unless it is presented within two years after the claim accrues, as provided in Title 28 U.S.C. § 2401(b).

*Id.* ¶ 46 and Ex. 14.

Mrs. Hutchinson filed this action on November 2, 2017. *Id.* ¶¶ 47-51; Dkt. No. 1. In her FAC she contends that the VA's conduct fell below the standard of care because the VA doctors failed to:

> (a) continue Hutchinson's mental health care and reevaluate treatment response to Buproprion/Wellbutrin medication; (b) assess Hutchinson's known history of suicidal ideation and gun

4

> accessibility; (c) assess Hutchinson's risk for suicide; and (d) disclose to Hutchinson the known risks of serious physical and mental harm associated with the Androderm supplemental testosterone patch.

*Id.* ¶ 58.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although an assertion that a claim is time-barred is an affirmative defense, a defendant may still raise a motion to dismiss based on the defense if the running of the limitations period is apparent on the face of the complaint. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (stating that, "[i]f the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss"). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.*; *see also Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").

Where a plaintiff appears pro se, as in this case, "the court must construe the pleadings liberally and must afford the plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "A pro se litigant must be given leave to amend his or her

complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam)), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)) (en banc); *accord Eldridge v. Block*, 832 F.2d 1132, 1135–36 (9th Cir. 1987).

## III. DISCUSSION

The United States moves to dismiss the complaint on the ground that Mrs. Hutchinson's administrative tort claim is time-barred because she failed to present it within two years of its accrual as the FTCA requires. 28 U.S.C. §§ 2401(b), 2675(a). The United States also moves to dismiss the complaint on the ground that it was not served on the Attorney General of the United States as required by Fed. R. Civ. P. 4(i)(1)(B). The Court addresses both grounds below.

### A. Timeliness of Mrs. Hutchinson's Administrative Claim

Administrative tort claims under the FTCA are subject to a two-year statute of limitations. 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."). A claim is "presented" to the VA "when the [VA] receives from a claimant . . . an executed SF 95 or other written notification of an incident, together with a claim for money damages, in a sum certain, for . . . personal injury or death . . . ." 38 C.F.R. § 14.604(b). An FTCA claim for medical malpractice or wrongful death "accrues" when the claimant discovers (or should have discovered after exercising reasonable diligence) both the injury and its probable cause. *See U.S. v. Kubrick*, 444 U.S. 111, 111, 115 (1979) (medical malpractice); *In re Swine Flu Prods. Liab. Litig.*, 764 F.3d 637, 639–40 (9th Cir. 1985) (wrongful death).

Mrs. Hutchinson's FAC states that her husband died on October 24, 2014, and the parties appear to agree that this is the date of her injuries. The United States' challenge to the FAC turns on the question of when her claim accrued.

The United States first argues that the claim accrued on October 24, 2014 because Mr. Hutchinson's suicide note on the day of his death directed his wife to "call the VA," which, according to the United States, creates an "association" between his death and the VA sufficient to

6

have at least alerted Mrs. Hutchinson that some conduct by the VA was the probable cause of his death. Dkt. No. 32 at 5. Additionally, or perhaps alternatively, the United States argues that Mrs. Hutchinson concedes she suspected the VA's negligence caused her husband's death from the moment of his death, if not before, citing the allegations in the FAC that detail her knowledge that he was using the Androderm patch, the problems she observed with his physical and mental health, and her questioning of VA doctors and staff shortly after his death about whether the Androderm patch was implicated in her husband's suicide. Dkt. No. 32 at 5.

In response, Mrs. Hutchinson argues that her claims did not accrue until early March 2015 when she had completed her review of her husband's medical records and grasped the extent of her husband's medical problems, including his history of mental illness and suicidal ideation. Dkt. No. 34 at 6. She argues that on October 27, 2014, she had a "belief" regarding the *possible* role of the Androderm patch in her husband's death—essentially, a working hypothesis—that she attempted to explore with the doctors and staff that had treated her husband. *Id.* at 7. She also argues, and pleads in the FAC, that the doctors and staff disputed her hypothesis, suggesting instead that the Androderm patch was actually beneficial to Mr. Hutchinson's health and that other unrelated factors, such as his recent financial difficulties, prompted her husband to take his own life. Dkt. No. 28 ¶ 36; Dkt. No. 34 at 7–9.

In *United States v. Kubrick*, the Supreme Court held that a claim accrues when the claimant becomes aware of his or her injury and its probable cause; the claimant need not also know that he or she has a legally actionable claim. 444 U.S. at 111. In *Kubrick*, there was no dispute that the claimant was aware of both his injury (hearing loss) and its probable cause (administration of neomycin)—indeed, a hearing specialist told him so—and the Court rejected the argument that accrual depended on the claimant's learning that administration of neomycin was negligent because it fell below the accepted standard of care. *Id.* at 114, 119, 123–24. While *Kubrick* emphasizes a claimant's obligation to diligently investigate potential claims, it does not address the question of when a claimant should be deemed to know the probable cause of an injury.

Applying *Kubrick*, the Ninth Circuit has held that the cause of an injury is known "when

7

the immediate physical cause of the injury is discovered." *Outman v. United States*, 890 F.2d 1050, 1051 (9th Cir. 1989) (citing *Davis v. United States*, 642 F.2d 328, 331 (9th Cir. 1982)). However, the Ninth Circuit does not appear to have addressed the question of when speculation about the possible cause of injury becomes sufficiently concrete or certain to constitute knowledge by the claimant of the probable cause of his or her injury in the context of a FTCA claim for wrongful death or medical malpractice.[2]

Mrs. Hutchinson relies on *Harrison v. United States*, 708 F.2d 1023 (5th Cir. 1983), in which the Fifth Circuit distinguished between mere "belief" regarding the probable cause of an injury and "knowledge" of the probable cause. In *Harrison*, the plaintiff speculated that a medical procedure performed by Air Force doctors damaged her brain. She had no evidence to support her speculation, and indeed, multiple doctors rejected it. *Id.* at 1023–25. Years later, Harrison obtained her medical records (which the Air Force had concealed from her) and discovered that Air Force doctors had botched the procedure and punctured her brain. *Id.* at 1026–27. Based on these facts, the Fifth Circuit held that Harrison's early speculation that Air Force doctors caused her injury did not become knowledge sufficient for her claim to accrue until she obtained her medical records. *Id.* 1027–28. The Fifth Circuit observed that "conclusions based on dreams, intuitions, suspicion, conjecture, ESP, speculation, or faulty reasoning, even if true, are merely 'belief,'" and that "[a]bsent a reasonable basis, these conclusions do not rise to the level of 'knowledge.'" *Id.* at 1027. Mrs. Hutchinson argues that, like Harrison, until she obtained her husband's medical records, she could only speculate as to the cause of his suicide, particularly in light of statements made by Nurse Brown, Ms. Mallon, and Drs. Stetz and Karwatowicz suggesting that the Androderm patch could not have caused her husband's death. Dkt. No. 34 at 7–9.

---

[2] Neither party cites Ninth Circuit authority that addresses this issue in the FTCA context, and the Court has located none. However, the Court notes that in *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139 (9th Cir. 2002), the Ninth Circuit discussed the "federal discovery rule" for claims arising under 42 U.S.C. § 9658 (the CERCLA statute). The Ninth Circuit quoted from *Kubrick* in defining the federal discovery rule applicable to CERCLA claims. *O'Connor*, 311 F.3d at 1147. It then held: "In sum, we reject an interpretation of the federal discovery rule that would commence limitations periods upon mere suspicion of the elements of a claim." *Id.* at 1148.

8

The United States says that *Landreth By & Through Ore v. United States*, 850 F.2d 532, 534 (9th Cir. 1988) holds that a claimant's expression of a "belief" that the United States is responsible for an injury is all that is required for a claim to accrue. Dkt. No. 35 at 3. But the United States relies too heavily on superficial pattern-matching (i.e., use of the word "belief"), rather than merits of the Ninth Circuit's decision. In *Landreth*, an infant was treated at an Air Force hospital after she swallowed some of her mother's quibron medication. 850 F.2d at 533. The Air Force doctor prescribed ipecac and sent the child home. *Id.* That evening, the child suffered seizures. *Id.* Doctors at a different hospital advised the Landreths that the seizures were caused by the quibron ingestion and that their daughter's stomach should have been pumped at the Air Force hospital. *Id.* The Landreths did not bring an FTCA claim against the Air Force until five or six years later. *Id.* The Ninth Circuit concluded that this claim was time-barred. *Id.* at 534. But what the *Landreth* court characterized as the parents' "belief" about the cause of their daughter's injury was really a firm conviction. The parents had been told at least five years before filing an administrative claim that their daughter had suffered brain damage as a result of ingesting quibron and the evidence showed they had long been convinced it was true. What they had not discovered earlier was that the Air Force had been negligent in treating her daughter when the child was brought in for treatment after ingesting the drug. The result in *Landreth* is in line with the decisions in *Kubrick*, *Outman*, and *Davis*, which hold that a claim will accrue even if the claimant does not know that the government's conduct fell below the standard of care.

The facts on which Mrs. Hutchinson relies in her opposition to the motion to dismiss differ from the facts in *Landreth*. She says that her belief about the cause of her husband's death was little more than hypothesis. She attempted to test her hypothesis that use of the Androderm patch caused her husband's death by raising it with his VA doctors and other staff, all of whom either contradicted her (e.g., insisting that the Androderm patch actually benefited her husband's health), pointed her to other non-governmental causes of her husband's death (e.g., his worry over financial difficulties), or told her they were "unsure." Indeed, the facts Mrs. Hutchinson has already pled resemble those in *Winter v. United States*, 244 F.3d 1088 (9th Cir. 2001), on which she also relies. In *Winter*, the plaintiff suspected that electrodes implanted in his leg caused an

9

infection, but his doctors told him he was wrong. *Id.* at 1089. Many years later, he filed a FTCA claim. The Ninth Circuit affirmed denial of summary judgment based on the statute of limitations, refusing to find that Winter—a lay person—knew or should have known the cause of his injuries when his own doctors rejected that cause. *Id.* at 1091; *see also id.* at 1090 ("We have consistently held that a cause of action does not accrue under the FTCA when a plaintiff has relied on statements of medical professionals with respect to his or her injuries and their probable cause."). Likewise, Mrs. Hutchinson explains in her opposition to the motion to dismiss that she did not know and could not reasonably be expected to discover the cause of her husband's death until she had an opportunity to review his medical records and learn the nature and extent of his physical and mental health conditions.

While the Court is not persuaded that Mr. Hutchinson's suicide note instructing his wife to "call the VA" put Mrs. Hutchinson on notice that the VA should be held responsible for his death, the FAC is, at best, ambiguous concerning the state of Mrs. Hutchinson's knowledge of the cause of her husband's death in the days, weeks, and months following his suicide. In particular, it is not clear from her pleading when Mrs. Hutchinson actually discovered that Dr. Karwatowicz's failure to monitor and treat her husband and/or the side effects of the Androderm patch prescribed by Dr. Stetz—as opposed to other factors independent of anything the VA did or did not do—caused her husband to take his own life. While she elaborates in her opposition brief on the circumstances leading up to her husband's death and her own beliefs about the cause of his death, these are critical facts that must be pled in the complaint, given the United States' challenge that Mrs. Hutchinson's administrative claim was presented more than two years after it accrued.

Moreover, as the United States correctly observes, Mrs. Hutchinson did not plead facts that would support application of the doctrine of equitable tolling. Mrs. Hutchinson argues in her opposition papers that "the traumatic loss and effects of her husband's suicide led to a deep depression and emotion distress that caused her to experience difficult processing dates and times and that she did not understand that she had until October 24, 2016 to file her administrative tort claim." Dkt. No. 34 at 9. But these assertions and the facts that might be pled in support of equitable tolling are not in the FAC.

A claimant who seeks the benefit of equitable tolling for a FTCA claim "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (citing *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)) (internal quotations omitted), *aff'd sub nom. United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015). Conclusory allegations of distress are insufficient. Rather, equitable tolling is only available where the facts pled plausibly demonstrate that the claimant was so impaired that she could not timely present her claim. *See Johnson v. Lucent Techs., Inc.*, 653 F.3 1000, 1010 (9th Cir. 2011) (citing *Bills v. Clark*, 628 F.3d 1092, 1099 (9th Cir. 2010); *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999)). Mrs. Hutchinson's FAC does not include facts sufficient to support equitable tolling of the statute of limitations.

Accordingly, because the FAC fails to state a claim for medical malpractice or wrongful death that is not time-barred, the first (and only) claim for relief is dismissed.

### B. Service of the Complaint

The United States also moves under Fed. R. Civ. P. 12(b)(5) to dismiss for insufficient service of process on the grounds that Mrs. Hutchinson had not served the U.S. Attorney General in Washington, D.C. pursuant to Fed. R. Civ. P. 4(i)(1)(B). In light of the Court's ruling dismissing the FAC, the United States' request to dismiss under Rule 12(b)(5) is moot. During the hearing on the motion to dismiss, the United States acknowledged the VA had been properly served, and conceded the defect in service on the Attorney General of the United States could be cured by delivery of the complaint and summons to the Attorney General by registered or certified mail. If Mrs. Hutchinson files a second amended complaint, she must serve it on the Attorney General of the United States in Washington, D.C. with a copy of the summons by registered or certified mail.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss WITH LEAVE TO AMEND.

As explained at the hearing on June 19, 2018, the Court believes Mrs. Hutchinson may

11

benefit from the assistance of appointed counsel. Accordingly, by separate order, the Court will refer Mrs. Hutchinson to the Federal Pro Se Program for possible placement with pro bono counsel and will stay all proceedings in the case for four weeks to allow time for the appointment to be made.

Mrs. Hutchinson may file a second amended complaint no later than 45 days following appointment of pro bono counsel, or if no such counsel can be appointed, she may file a second amended complaint no later than 30 days after the Court lifts the stay in this case. If Mrs. Hutchinson wishes to add new claims or defendants to her complaint, she must seek leave of the Court to do so.

Any such amended complaint and the summons must be served on the Attorney General of the United States in Washington, D.C. via registered or certified mail, as required in Fed. R. Civ. P. 4(i)(1)(B).

**IT IS SO ORDERED.**

Dated: June 29, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge